*IN THE UNITED STATES DISTRICT COURT*
*FOR THE NORTHERN DISTRICT OF ILLINOIS*
*EASTERN DIVISION*

| | | |
|---|---|---|
| CATALINA LONDON, LTD., f/k/a ALEA LONDON, LTD., | ) ) ) | Case No. |
| Plaintiff, | ) ) | Assigned Judge: |
| v. | ) ) | |
| JOHNSON & BELL, LTD., GLENN FENCL, RICHARD R. GORDON and MARY CRYAR, | ) ) ) ) | Designated Magistrate Judge: |
| Defendants | ) | **JURY DEMANDED** |

## COMPLAINT

Plaintiff Catalina London, Ltd., f/k/a Alea London, Ltd. ("Alea") by and through its attorneys, The Law Offices of Matthew R. Wildermuth and Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, P.C., states as follows as its Complaint at law against Defendants Johnson & Bell, Ltd., Glenn Fencl, Richard Gordon and Mary Cryar (collectively, "Defendants"):

**I. THE PARTIES:**

1. Alea is a foreign corporation incorporated under the law of England. Alea offers insurance services and its primary business address is 18 Mansell Street, London, England. Effective October 29, 2009, Alea formally changed its name to Catalina London, Ltd.

2. Johnson & Bell, Ltd. ("J&B") is a law firm practicing in the States of Illinois and Indiana and has its principal place of business located at 33 W. Monroe Street, Suite 2700, Chicago, IL 60603-5404.

3. Glenn Fencl ("Fencl") is an adult individual and is an attorney with and partner in J&B. Fencl's principal place of business is 33 W. Monroe Street, Suite 2700, Chicago, IL 60603-5494.

4. Richard R. Gordon ("Gordon") is an adult individual. Gordon is an attorney and formerly practiced law at J&B as an associate attorney. On information and belief, Gordon's current principal place of business is 20 S. Clark Street, Suite 2600, Chicago, IL 60603-1813.

5. Mary Cryar ("Cryar") is an adult individual. Cryar is an attorney and formerly practiced law at J&B as an associate attorney. On information and belief, Cryar's current principal place of business is 400 Poydras Street, Suite 2600, New Orleans, LA 70130.

## II. JURISDICTION AND VENUE.

*6.* This Court has jurisdiction over this dispute pursuant to 28 U.S.C. §1332 because the parties are completely diverse and the amount in controversy in this action exceeds $75,000.00, exclusive of interest and costs. Alea is a citizen of a foreign country and the Defendants are citizens of the States of Illinois, Indiana and Louisiana. Therefore, no Defendant is a citizen of the same state as Alea.

7. Venue is proper in this district pursuant to 28 U.S.C. §1391 because Defendants J&B, Gordon and Fencl maintain their respective principal places of business within this district and because many of the events giving rise to the dispute took place in within this district.

### III. FACTUAL BACKGROUND:

8. Alea issued commercial general liability insurance policy No. SCP001607 to TriK Development with effective dates of coverage of April 21, 2005 through April 21, 2006 ("Policy"). Alea attaches a true and correct copy of the Policy as Exhibit A to this Complaint and incorporates it by reference as if fully set forth herein.

9. William and Noel Weber sued TriK Development (hereinafter "TriK") in the Circuit Court of Will County, Illinois, Case No. 06 L 537, seeking to recover damages for personal injuries William Weber claimed he suffered as a result of a motorcycle accident that occurred near one of TriK's projects (the "Underlying Action").

10. According to the pleadings in the Underlying Action, on August 21, 2005, William Weber was riding his motorcycle in the vicinity of 163rd and Cedar Road in Homer Glen, Illinois when he encountered a trench in the road. Weber alleged that the trench had been dug in the road to run sewer lines for a construction project Tri K was developing in that area.

11. On or about September 11, 2006, TriK provided Alea a copy of the complaint in the Underlying Action and requested Alea to provide coverage to TriK under the Policy in respect of TriK's potential loss arising out of the Underlying Action (the "First Notice of Claim").

12. Alea, through its third party administrator, Cannon Cochran Management Services, Inc. (hereinafter "CCMSI"), retained J&B to provide Alea advice and counsel with regard to the extent to which, if at all, the Policy provided coverage to TriK or any other parties in connection with the claims asserted in the Underlying Action and for J&B to provide its recommendations as to Alea's options in responding to the First Notice of Claim.

13. Through a letter dated April 16, 2007 from Fencl to Michael Jackson at CCMSI, J&B accepted the assignment to provide Alea its professional opinion regarding Alea's rights and obligations under the Policy with respect to the Underlying Action.

14. On or about May 18, 2007, J&B, by and through Gordon, provided a coverage opinion to Alea (the "May 18 Letter"). Alea attaches a true and correct copy of the May 18 Letter to this Complaint as Exhibit B and incorporates it by reference as if fully set forth herein.

15. In the May 18 Letter, J&B opined that Tri-K had not complied with the Sub-Contractor's Warranty Endorsement of the Policy, under which TriK committed to ensure that each of its subcontractors had insurance in place to protect TriK against liability arising out of the subcontractor's performance of its

4

work for TriK. See Exhibit B at p. 10. J&B advised Alea that TriK had no written agreement with the subcontractor who dug the trench at issue in the Underlying Lawsuit and had not obtained from that subcontractor evidence that it had insurance in place to protect TriK against liability arising out of its work for TriK. Id. J&B therefore argued that TriK's failure to ensure that its subcontractor had proper insurance in place to protect TriK against liability from that contractor's work subjected TriK to greater potential liability and exposed Alea to greater risk under the Policy. Id. J&B thus asserted that TriK could not prove compliance with the Sub-Contractor's Warranty Endorsement of the Policy and, therefore, TriK could not satisfy a condition precedent to coverage under the Policy. Id.

16. J&B's May 18 Letter also advised Alea that the allegations of the Underlying Lawsuit triggered application of the Earth Movement Exclusion in the Policy. Id. at p. 11. As discussed *infra*, however, J&B's research and analysis of this coverage issue was inadequate, as J&B failed to uncover existing Illinois case law that completely undermined its position.

17. Based on the two conclusions referenced in Paragraphs 15-16 above, J&B asserted in its May 18 Letter to Alea that the Policy provided no coverage to TriK in respect of the Underlying Action and recommended that Alea file a declaratory judgment action seeking a ruling that Alea had no obligations under the Policy to TriK with respect to the Underlying Lawsuit. Id. at p. 13.

18. J&B's recommendations to Alea in the May 18 Letter regarding Alea's rights and obligations under the Policy with respect to the Underlying Action were erroneous and improper.

19. J&B failed completely to recognize the disparity between TriK's representations regarding the nature and scope of its operations in its insurance application to Alea (the "Application") and the type of work TriK was actually performing on its projects. A true and correct copy of the Application is attached to and forms part of the Policy attached as Exhibit A to this Complaint. In the Application, TriK described itself as having only management and oversight responsibilities with respect to its projects, i.e., a "paper general contractor" with little or no "hands-on" responsibilities at the project site. See Application at Exhibit A. The allegations of the Underlying Action, however, revealed that TriK had entered into project agreements through which its responsibilities and corresponding exposure were well in excess of the scope of work represented to Alea in the application. See Complaint in Underlying Action, a true and correct copy of which is attached hereto as Exhibit C and is incorporated by reference, at ¶¶ 3, 6.

20. Through CCMSI, Alea provided the Application to J&B as part of the Policy at or about the time Alea requested J&B's professional advice regarding Alea's obligations to TriK in connection with the allegations of the Underlying Action. Prior to the time it prepared and transmitted the May 18 Letter, J&B thus had in hand all of the information and documentation necessary

6

that, with proper scrutiny, would have alerted J&B to the possibility that TriK had materially misrepresented the nature of its work (and its corresponding liability exposure) in the Application it submitted to Alea.

21. A reasonably competent insurance coverage lawyer would have recognized that Alea had a potentially viable claim to rescind the Policy based on misrepresentations TriK made in the Application that were material to Alea's assessment and acceptance of the risks insured under the Policy. In the event a court concluded that Alea was entitled to rescind the Policy based on TriK's misrepresentations in the Application, Alea would not have had any obligations to TriK under the Policy in connection with the Underlying Action or otherwise.

22. J&B's May 18 Letter made no mention whatsoever of the possibility that Tri-K may have misrepresented its relationship with its subcontractors and/or the nature of its involvement in its construction projects in the Application TriK submitted to Alea. Accordingly, J&B either failed to appreciate or ignored the significance of evidence supporting the proposition that TriK made material misrepresentations in the Application, which misrepresentations might vitiate coverage under the Policy.

23. Based on Defendants' coverage analysis and recommendation, Alea, through CCMSI, authorized Defendants to file a declaratory judgment action. J&B thereafter prepared and transmitted to Alea a proposed declaratory judgment complaint that raised only the two defenses described in Paragraphs 15-16 *supra.*

24. On August 1, 2007, J&B, by and through Gordon, filed a declaratory judgment action on Alea's behalf in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, styled <u>Alea London, Ltd. v. Tri-K Development, Inc., et al.</u>, Case No. 07-CH-21009 (the "Declaratory Judgment Action"). Alea attaches as Exhibit D to this complaint a true and correct copy of the complaint J&B filed in the Declaratory Judgment Action and incorporates it by reference as if fully set forth herein.

25. The complaint J&B prepared and filed in the Declaratory Judgment Action alleged that Alea had no duty to defend Tri-K in the Underlying Lawsuit because TriK failed to comply with the Subcontractor's Warranty Endorsement and that the Policy's Earth Movement Exclusion provided an independent basis upon which to find there was no coverage for Tri-K for the Underlying Action.

26. Although the complaint J&B prepared and filed in the Declaratory Judgment Action attached the Application as an exhibit as part of the Policy, J&B did not include in the complaint any allegations that Tri-K had made material misrepresentations in the Application and did not assert a claim to rescind the Policy based on such misrepresentations.

27. In the meantime, certain municipal entities that Weber had named as defendants in the Underlying Lawsuit tendered their defense in the Underlying Lawsuit to Alea. The municipal defendants asserted that, pursuant to the terms of an Annexation Agreement they had executed with TriK, they were entitled to a defense and indemnity under the Policy. Specifically, each of

8

the municipal defendants claimed that the Annexation Agreement constituted an "insured contract" as that term is defined in the Policy.

28. Upon receipt of these tenders from the municipal defendants, Alea, through CCMSI, requested J&B to advise it regarding any obligations Alea may have to the municipal defendants under the Policy. Consistent with J&B's written recommendations, Alea declined the tender from the municipal defendants and authorized J&B to amend the complaint in the Declaratory Judgment Action to include the municipal defendants. J&B filed the Amended Complaint on or about March 28, 2008, alleging, among other things, that there was no coverage under the Policy for these municipal entities because the Policy did not identify them as "additional insureds" as the Policy defines that term. The amended complaint J&B prepared and filed on Alea's behalf further alleged that the Annexation Agreement did not require TriK to list the municipal defendants as "additional insureds" under the Policy.

29. By the fall of 2008, Tri-K, with other parties joining later, moved for partial summary judgment in the Declaratory Judgment Action on the grounds that the Earth Movement Exclusion in the Policy did not apply to preclude coverage for the claims asserted in the Underlying Action.

30. In its motion for partial summary judgment, Tri-K cited to Illinois case law which was directly contrary to Defendants' advice to Alea regarding the state of the law in Illinois with respect to the potential application of the Policy's Earth Movement Exclusion.

31. TriK's pleading revealed that J&B had failed to identify or evaluate on-point Illinois decisions regarding the Earth Movement Exclusion as part of its recommendations to Alea set forth in its May 18 Letter. Compounding this error, following receipt of TriK's pleading, Defendants failed to revisit their opinions about the potential applicability of the Earth Movement Exclusion and did not conduct new, independent research to determine whether TriK's statement of the law was correct. Moreover, J&B never alerted Alea that Tri-K had cited to Illinois authority that conflicted with J&B's May 18, 2007 assessment of the application of the Earth Movement Exclusion, nor did J&B ever address how the authority TriK cited might impact Alea's chances of prevailing in the Declaratory Judgment Action.

32. Following several other iterations of their claims in the Underlying Action and before the Court ruled on Tri-K's motion for partial summary judgment, Weber filed a Fourth Amended Complaint in the Underlying Action on or about February 19, 2009.

33. The Fourth Amended Complaint in the Underlying Action asserted that TriK engaged in negligent conduct that was distinct from and independent of the conduct of TriK's subcontractor. The Fourth Amended Complaint also removed all prior contentions that could be construed as asserting that the "movement of earth" caused or contributed to Weber's accident.

34. On or about April 29, 2009, after receipt of the Fourth Amended Complaint in the Underlying Action, J&B recommended to Alea that it withdraw

its prior denial of a defense to Tri-K. Specifically, through correspondence Gordon authored and transmitted to CCMSI, J&B asserted that Alea now had an obligation under the Policy to defend TriK against the Underlying Action but suggested that Alea do so subject to a strict reservation of rights preserving Alea's right to assert the absence of coverage based on the Subcontractor's Warranty Endorsement. Through Gordon's correspondence, J&B also recommended that Alea dismiss the pending Declaratory Judgment Action without prejudice.

35. Through Gordon, J&B also purportedly undertook on Alea's behalf to accept the municipal defendants' tender of the defense of the Underlying Action and further represented to counsel for those parties that Alea would be dismissing the Declaratory Judgment Action.

36. At or about this same time, Gordon left J&B. Thereafter, under Fencl's supervision, J&B associate Cryar assumed the day-to-day handling of the matter on behalf of Alea.

37. On or about June 17, 2009, Cryar advised Alea that, contrary to the prior communications transmitted by Gordon, J&B <u>was not</u> retracting its opinion that the Subcontractor's Warranty Endorsement and the Earth Movement Exclusion precluded coverage for the Underlying Lawsuit and that J&B was standing on the analysis originally set forth in its May 18, 2008 Letter.

38. As of June 19, 2009, it appears that the Defendants still had not considered the merits of a potential rescission claim against TriK based on TriK's

11

misrepresentations in the Application or, if they had considered it, they never imparted any information on this issue to Alea.

39. Throughout this time, the parties to the Declaratory Judgment Action filed numerous additional pleadings, including counterclaims and motions for summary judgment.

40. In or about October, 2009, Alea retained a new third party administrator, Jackson Riley, Inc. ("JRI"), to assist it in administering Alea's claims. Among other things, at about this time, JRI instructed Defendants to transfer a number of files, including the Declaratory Judgment Action, to the Novak Law Firm in Chicago, Illinois ("Novak") for future handling.

41. Defendants continued to represent Alea's interests in the Declaratory Judgment Action until Novak substituted its appearance for J&B on or about November 6, 2009. As of that date, the Defendants had not raised with Alea or any of its agents the viability of a rescission claim against TriK in connection with TriK's misrepresentations in the Application.

42. Upon receipt and review of J&B's file, including the Policy and Application, documents from the Underlying Action, the Declaratory Judgment Action and J&B's prior correspondence with Alea, Novak discovered the potential rescission defense and confirmed that J&B had not previously addressed that issue with Alea, the parties to the Declaratory Judgment Action or the court in that Action. At Alea's direction, Novak promptly requested and received permission from the court in the Declaratory Judgment Action to file a

12

supplemental brief on Alea's motion for summary judgment in order to raise the rescission issue.

43. Through Novak, Alea thereafter filed its supplemental brief arguing that Tri-K had gone beyond its role as a "paper general contractor" and engaged in actual construction activities at the project at issue in the Underlying Action. Accordingly, Alea contended that it was entitled to rescind the Policy because Tri-K had materially misrepresented in the Application the nature and scope of the work for which it sought insurance from Alea.

44. On or about February 26, 2010, the Court in the Declaratory Judgment Action entered an order on the various motions for summary judgment (the "February 26 Opinion"). Among other things, the Court decided in the February 26 Opinion that Alea had a duty to defend Tri-K in the Underlying Lawsuit with respect to allegations of TriK's independent negligence. The Court's February 26 Opinion further held that the Annexation Agreement constituted an "insured contract" under the Policy. The Court also noted in its February 26 Opinion that Alea had not previously argued that the Policy might be subject to rescission because TriK had made material misrepresentations in its application.

45. Alea moved to have the Court reconsider the February 26 Opinion, which motion the Court denied. Instead, the Court amended the February 26 Opinion through a memorandum and opinion dated May 21, 2010 (the "May 21 Opinion"). In its May 21 Opinion, the Court framed the issue as originally

presented as being whether TriK was owed a defense and concluded that Alea did owe TriK a defense. The Court acknowledged in its May 21 Opinion that the issue of TriK's alleged misrepresentations in the Application might give rise to a viable rescission claim for Alea, the Court did not consider that issue to bear directly on the issue of whether TriK was owed a defense as the prior pleadings framed the issue.

46. Thereafter, Alea filed a motion in the Declaratory Judgment Action seeking leave to file a second amended complaint to include Alea's claim for rescission of the Policy based on TriK's misrepresentations in the Application. The Court denied that motion by order dated July 10, 2010 (the "July 10 Order").

47. Thereafter, Alea sought to address its rescission claim against TriK during briefing on a cross-motion for summary judgment, which cross-motion the Court struck by order dated January 5, 2011 (the "January 5 Order").

48. In the aggregate, the Court's February 26 Order, May 21 Order, July 10 Order and January 5 Order precluded Alea from pursuing a potentially viable claim against TriK to rescind the Policy based on TriK's misrepresentations in the Application.

49. Alea subsequently was compelled to participate in mediation regarding the claims presented in the Underlying Action and the Declaratory Judgment Action. The negotiations conducted through this mediation ultimately led to a settlement between the claimant (Weber), TriK, the municipal defendants and Alea through which Alea paid its full per occurrence limits under the Policy

($1,000,000) and additionally paid approximately $75,000 to resolve the municipal defendants' claims for reimbursement of their defense costs. Alea has already paid the entire $1,075,000 amount to which it committed under the negotiated settlement and has obtained corresponding releases from all parties asserting rights under the Policy.

50. Alea also incurred the costs associated with Defendants' fees in prosecuting a poorly pleaded and mishandled declaratory judgment action and the added costs of its new counsel's efforts to correct the mistakes made by the Defendants.

## IV. CLAIM FOR LEGAL MALPRACTICE:

51. Defendants failed to exercise reasonable care and skill in undertaking to perform legal services for Alea with respect to the Underlying Action and the Declaratory Judgment Action. Specifically, Defendants' advice to and conduct on behalf of Alea breached the duty of care Defendants owed to Alea because, among other things, Defendants:

   a. Failed to review the Application when rendering its coverage opinion;

   b. Failed to ascertain and/or to recognize that TriK made material misrepresentations of fact on the Application that would have supported rescission of the Policy;

   c. Failed to advise Alea that it had a valid claim for rescission of the Policy;

15

    d. Failed to advise Alea to include and/or failed to include rescission as a basis for denial of coverage in correspondence drafted for and/or on behalf of Alea to TriK;

    e. Failed to assert rescission of the Policy as a basis for a finding of lack of coverage in the Declaratory Judgment Action;

    f. Failed to properly analyze, research and advise Alea on the bases for denying coverage to TriK under the Policy;

    g. Failed to include proper bases for denial of coverage in pleadings and arguments asserted on behalf of Alea in the Declaratory Judgment Action;

    h. Failed to recognize and to advise Alea that factual change(s) in amended pleadings in the Underlying Action altered the coverage position;

    i. Advised Alea to assert grounds for denial of coverage for the Underlying Action that lacked a proper factual or legal basis;

    j. Advised Alea to persist in its denial of coverage on improper and/or inadequate bases after factual change(s) in amended pleadings in the Underlying Action altered the coverage position;

    k. Failed to take corrective action to cure deficiencies in the Declaratory Judgment Action pleadings once factual change(s) in the pleadings in the Underlying Action altered the coverage position; and

    l. Engaged in other such acts of professional negligence as may be shown through on-going investigation, and discovery, and at trial.

52. But for the Defendants' failure to exercise proper care and skill in the foregoing matters, Alea would have prevailed in its Declaratory Judgment Action.

53. As a proximate result of the Defendants' negligence alleged in this complaint and the loss of the opportunity to properly deny coverage to its insured, Alea was caused to pay claims associated with the Underlying Action and was damaged in the sum of $1,075,000.00.

54. As a proximate result of the Defendants' negligence alleged in this complaint, Alea incurring costs associated with paying the Defendants for substandard legal work and subsequently hiring substitute counsel in an effort to correct or mitigate the effects of Defendants' deficient performance with respect to the Underlying Action and the Declaratory Judgment Action.

WHEREFORE, Alea respectfully requests this Court to enter judgment in its favor against the Defendants, jointly and severally, for:

   a) the sums Alea was compelled to pay to settle the Underlying Action as a result of the Defendants' negligence;

   b) costs Alea incurred in connection with the Underlying Action;

   c) costs incurred in bringing the Declaratory Judgment Action;

   d) costs incurred in bringing this action; and

e)  such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

CATALINA LONDON, LTD.,
F/K/A ALEA LONDON, LTD.


s/ Matthew R. Wildermuth


Matthew R. Wildermuth
THE LAW OFFICES OF
MATTHEW R. WILDERMUTH
33 N. LaSalle Street, Suite 1900
Chicago, IL 60602-4424
Phone:  312-425-2522
Fax:  312-264-0652
IL Bar No. 6202106
mwildermuth@wildermuthlawoffices.com

Joseph M. Toddy (*pro hac vice pending*)
Patricia W. Holden (*pro hac vice pending*)
ZARWIN, BAUM, DEVITO, KAPLAN,
SCHAER & TODDY, P.C.
1818 Market Street, 13th Floor
Philadelphia, PA 19103
Phone:  215-569-2800
Fax:  215-569-1206
jmtoddy@zarwin.com
pwholden@zarwin.com