**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CATALINA LONDON, LTD., f/k/a | ) | |
| ALEA LONDON, LTD. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | Case No. 11-cv-07389 |
| | ) | |
| JOHNSON & BELL, LTD., GLENN | ) | |
| FENCL, RICHARD R. GORDON, and | ) | |
| MARY CRYAR, j/s/a, | ) | Judge Sharon Johnson Coleman |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Catalina London, Ltd. f/k/a Alea London Ltd. ("Alea"), filed a complaint alleging

legal malpractice against defendants, Johnson & Bell, Ltd., and three of its attorneys, Glenn Fencl,

Richard R. Gordon, and Mary Cryar (collectively "J&B"). The parties have filed cross-motions for

summary judgment [105, 107], which the Court denies for the reasons set forth below.

**Background**

While the basic facts are largely undisputed, the parties disagree as to the inferences to be

drawn therefrom, much of which rests with the credibility of a host of witnesses and experts. Alea is

a foreign corporation offering insurance services.[1] Johnson & Bell Ltd. is an Illinois corporation

offering legal services. Cannon Cochran Management Services ("CCMSI") was Alea's third-party

claims administrator. Michael Jackson was a senior claims adjuster with CCMSI and Brian Poust was

his supervisor in 2005. CCMSI held themselves out as experts in handling Illinois claims.

The underlying claim in *Weber v. Tri-K Development*, 06-L-537 (the "Weber Case") involved a

---

[1] Alea formally changed its name to Catalina London Ltd. on October 29, 2009. This Court refers to plaintiff as Alea, as
the parties do, for simplicity and to avoid confusion.

1

man, Weber who was injured on his motorcycle in the vicinity of where one of Alea's insured's (Tri-K Development ("Tri-K")) was working as a general contractor. Jackson received notice of the Weber claim on September 13, 2006, from Susan Zeilke of CRC. CRC was Alea's U.S. claims broker. CCMSI began investigating the claim to determine whether coverage should be afforded to Tri-K under the Alea policy. Prior to the accident in the Weber claim, Tri-K applied to Alea for a general liability policy. The general liability policy was issued to "paper general contractors," which is a general contractor that has no obligation at the job site and has contracted out all of the obligations for construction.

Jackson testified that after investigating the Weber claim, he determined that there was no coverage to Tri-K. Jackson identified the subcontractor's warranty under the Earth Movement Exclusion as a potential defense based on his review of the policy language and his investigation. Jackson testified that he did not review the Weber complaint before reaching that conclusion. Jackson testified that he did not review Tri-K's application for the policy with Alea. On December 19, 2006, Jackson sent Mike Raynor, the underwriter at Alea who Jackson would report to on claim coverage issues, his initial case analysis stating that there was potentially no coverage for Tri-K. Jackson requested authority to deny coverage and sent a draft denial of coverage letter. The draft denial referenced the subcontractors warranty and the earth movement exclusion. At the time Jackson wrote the coverage letter, he did not consider rescission a viable defense to the insurance policy. Prior to 2006, Jackson had never denied coverage based on rescission. Jackson sent the denial of coverage letter to the insured. Tri-K did not refute their position and a default motion was filed in the Weber law suit.

On March 22, 2007, nearly three months after Jackson denied Tri-K coverage, Jackson sent an email to Raynor informing him that Tri-K defaulted. Based on that development and the potential exposure to Tri-K, Jackson recommended that they file a declaratory judgment action to

confirm the coverage and to protect Alea from potentially having exposure to Tri-K, Jackson

recommended that they file a declaratory judgment action to confirm the coverage and to protect

Alea from potentially having exposure for a claim for not handling the coverage denial appropriately.

Jackson recommended retaining J&B for Alea to confirm that there was no coverage afforded under

the policy.

Prior to the retention of J&B, CCMSI had their own coverage position. Alea was aware that

CCMSI believed that the subcontractor's warranty and the earth movement exclusion should be

pursued and Alea agreed with that position. Alea retained J&B on April 3, 2007. Glenn Fencl of J&B

was the primary attorney handling the case and was responsible for the file along with Richard

Gordon, an associate. J&B was aware of CCMSI's coverage opinion. Gordon testified that he would

have reviewed the matter to determine whether there was any defense to coverage, not just the

position asserted by the client. J&B sent CCMSI their coverage opinion letter on May 18, 2007. The

letter concluded that J&B believed the endorsement precluded coverage. The letter also included a

detailed analysis of J&B's interpretation of the viability of the earth movement exclusion. Ultimately,

based on those two considerations, defendants agreed with CCMSI's request to file a declaratory

judgment action. J&B did not guarantee with 100% certainty that either the subcontractor's warranty

or the earth movement exclusion would ultimately prevail in the declaratory judgment. Sub-point B

of the opinion letter addressed the earth movement exclusion, stating the no Illinois court had

examined a provision similar to the earth movement exclusion provision in this policy.

J&B sent a draft complaint to be filed in the declaratory action to Alea and Jackson. Neither

Jackson nor Alea had any revisions to the draft complaint and Alea consented to the filing of the

complaint. J&B filed the complaint on August 1, 2007, in the Circuit Court of Cook County,

Chancery Division, where it was assigned to the Honorable Rita Novak, and the parties began

discovery. Meanwhile, the Weber law suit was proceeding. J&B filed a motion to deem facts

admitted, which Judge Novak denied without prejudice because it was premature since certain parties had not yet filed appearances.

Jackson spoke to Stephanie Horton at Gordon Agency who informed him that Evlyn Springs and Tri-K were owned by the same person. That information concerned Jackson because it did not seem right that Evlyn Springs could be the same entity since he had a certificate of insurance showing the Evlyn Springs was covered under a Scottsdale Insurance policy. Jackson asked Gordon to investigate whether Evlyn Springs was owed a defense. Jackson did not ask Gordon to explore rescission as a defense.

The Best Vanderlaan law firm represented one of the municipal entities in the Weber lawsuit. On January 2, 2008, Best tendered the municipal entities defense based on an annexation agreement. In response to the tender of defense by Best Vanderlaan on behalf of certain municipal entities, defendants sent CCMSI a letter on January 21, 2008, recommending that the tender be denied. J&B also suggested that the declaratory judgment action be amended to seek clarification of whether a defense was owed to the municipal entities.

At some point, Kim Kappos took over from Jackson handling the matter with Jim Dunn also assigned to the claim. On April 29, 2009, Gordon sent a letter to Kappos explaining that the Webers had filed a fourth amended complaint in the underlying case that impacted the declaratory judgment action. Gordon suggested, based on the changes in Weber's allegations, the declaratory judgment action be withdrawn. Gordon subsequently left J&B and associate Mary Cryar took over the file.

In October 2009, Alea's new third party administrator, Jackson Riley, Inc. ("JRI"), who replaced CCMSI, instructed Alea to transfer a number of files, including the declaratory judgment at issue here, to the Novak Law Firm ("Novak"). Attorney Neal Novak substituted as counsel for Alea on November 6, 2009. At the time if the substitution there were three fully briefed cross-motions

for summary judgment pending with a hearing scheduled for December 15, 2009. Less than two weeks before the hearing date on the motions for summary judgment, Attorney Novak made the decision to supplement the briefing that was previously filed by J&B. The basis for the proposed supplemental brief was that Novak wanted to supplement the record on the subcontractor's warranty in light of the representations of the insured. Attorney Novak testified that the pleadings and motions on file limited what he could raise in supplemental briefing and this was the only way he could insert the rescission issue into the case. The motion for leave to supplement the briefing was filed on November 30, 2009, and was subsequently granted by Judge Novak. The relevant insurance application was an exhibit to the supplemental brief and identified as rescission as a potential alternative remedy because it was not alleged in the complaint.

On December 3, 2009, Novak emailed his associate Patricia Caracci and Jay Hulstine at JRI, stating that if Judge Novak denies the motion for summary judgment, then he will seek rescission of the contract for material misrepresentation and nondisclosure. On February 26, 2010, Judge Novak denied in part Alea's motion for summary judgment against Tri-K, finding that Alea had a duty to defend Tri-K for allegations relating to its own acts of negligence, but did not have a duty to defend claims arising from subcontractor's work.

Attorney Novak filed a motion to reconsider and testified that if that motion was denied he would then seek leave to file an amended complaint raising rescission. Judge Novak issued an amended order on May 21, 2010, clarifying her ruling without changing the outcome. On June 3, 2010, Novak filed a motion for leave to file a second amended complaint, alleging rescission. Judge Novak denied the motion. Attorney Novak attempted to raise rescission through a proposed third amended complaint and cross-clam for motion for summary judgment on a co-defendant's counterclaim. Judge Novak denied these motions as well. In his deposition, Novak deferred to Judge Novak's report of proceedings on the issue, which indicated that rescission was "procedurally

forfeited."

Alea retained two experts in this case, Lawrence Mason to testify to the attorney standard of care and William Cormack to testify to the custom and practice in the insurance industry for retaining and using outside counsel and the relationship between the carrier and the attorney when assessing coverage issues. J&B retained one expert, Jill Berkeley, an attorney with experience representing both insurers and policyholders in insurance coverage cases. The experts present conflicting testimony and opinions on whether J&B met the standard of care in their representation of Alea.

**Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also* Fed. R. Civ. P. 56(c). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). On cross-motions, summary judgment is appropriate only when evidence as a whole shows there is no genuine dispute as to any material fact, *Davis v. Time Warner Cable of Southeastern Wis., L.P.*, 651 F.3d 664, 671 (7th Cir. 2011), regardless of which motion the evidence is attached. *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

**Discussion**

Alea alleges that J&B failed to exercise reasonable care and skill in undertaking to perform legal services for Alea with respect to the underlying insurance coverage declaratory judgment action. The cross-motions before the court are based on opposing sides of three basic arguments.

First, the parties dispute whether the rescission claim was still viable when Novak substituted for

J&B as counsel for Alea on the declaratory judgment action. Second, to the extent that the rescission

claim was viable, the parties dispute whether it would have been meritorious. Third, the parties

dispute whether J&B acted in good faith using professional judgment or negligently failed to

adequately investigate and evaluate the coverage issue.

Under Illinois law, Alea must prove: (1) the existence of an attorney-client relationship that

establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of

that duty; (3) proximate cause; and (4) damages. *Lopez v. Clifford Law Offices*, 362 Ill. App. 3d 969,

974-75, 841 N.E. 2d 465 (1st Dist. 2005). "A legal malpractice suit is by its nature dependent upon a

predicate lawsuit. Thus, a legal malpractice claim presents a 'case within a case.'" *Nelson v. Quarles and*

*Brady, LLP*, 2013 IL App (1st) 123122, *P28, 997 N.E. 2d 872 (1st Dist. 2013) (citing *Claire Associates*

*v. Pontikes,* 151 Ill. App. 3d 116, 122, 502 N.E. 2d 1186 (1986).

*1. Duty and Proximate Cause*

As noted above the parties dispute whether J&B can be liable for failing to raise rescission as

a defense. "Where there are successive negligent actors… the negligence of the second actor, under

certain circumstances may be deemed a superceding cause – relieving the original actor of liability, as

a matter of law." *Lopez,* 362 Ill. App. 3d at 979. In order for the liability to shift to successor counsel,

the successor must have had the opportunity to undo or avert the harm precipitated by the actions

or omissions of the original attorney. *Id.* at 980. Put another way, who owed Alea a duty and can be

held liable for Alea's alleged injury. The issue of duty, here, dovetails with proximate cause. Whether

the rescission defense was viable at the time attorney Novak substituted as counsel is central to both

duty and proximate cause. An attorney's duty ceases upon discharge; therefore, if the cause of action

was viable at the time of discharge of an attorney, then the plaintiff can prove no set of facts which

connect defendant's conduct with any damage sustained by plaintiff. *Land v. Greenwood,* 133 Ill. App.

7

3d 537, 541, 478 N.E. 2d 1203, 1206 (4th Dist. 1985).

"The issue of proximate cause should never be decided as a matter of law where reasonable persons could reach different results." *Nettleton v. Stogsdill,* 387 Ill. App. 3d 743, 753, 899 N.E. 2d 1252 (2d Dist. 2008). Only where (1) the facts are undisputed and (2) there can be no difference in the judgment of reasonable persons as to the inferences that may be drawn from the facts, should proximate cause be determined as a matter of law. *Id. citing Public Taxi Service, Inc. v. Barret,* Ill. App. 3d 452, 456, 357 N.E. 2d 1232 (1976).

While there is no question that J&B as counsel had a duty to Alea to provide coverage opinions and to pursue a declaratory judgment action if appropriate, the parties dispute when that duty terminated and whether liability for the omission of a rescission claim is traceable to J&B. This Court finds there is a factual question as to whether the rescission claim remained viable upon Novak filing his appearance. J&B argues that Attorney Novak could have sought to amend the complaint for declaratory judgment as soon as he substituted his appearance as counsel rather than waiting eight months to seek leave to file a second amended complaint raising rescission. Alea asserts that the rescission defense was forfeited by the time Novak took over the case because discovery had closed and dispositive motions had been briefed and the "mend the hold" doctrine precluded Alea from changing course during litigation to assert a new reason for denying coverage. Alea further asserts that Judge Novak found the defense forfeited when she ultimately ruled on Attorney Novak's motion for leave to amend the complaint to add rescission.

The Illinois Appellate Court recently discussed application of the mend the hold doctrine in insurance cases in an unpublished opinion. The court described the doctrine, quoting the Illinois Supreme Court:

> Where a party gives a reason for his conduct and decision touching anything
> involved in a controversy, he cannot, after litigation has begun, change his ground,
> and put his conduct upon another and different consideration. He is not permitted
> thus to amend his hold. He is estopped from doing it by a settled principle of law.

8

*Enterprise Leasing Company of Chicago v. Jenkins,* 2014 IL App (1st) 130583-U, at \*P12; 2014 Ill. App. Unpub. LEXIS 1731 (Aug. 11, 2014) (quoting *Schuyler v. Missouri Bridge & Iron Co.,* 256 Ill. 348, 353, 100 N.E. 239 (1912)).

As the court explains, a variation of the doctrine applies to insurance cases in Illinois. The Illinois Supreme Court has held that insurers who believe that a lawsuit is not covered under a policy have only two options: (1) they may defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage. *Enterprise Leasing Company of Chicago,* 2014 IL App (1st) 130583-U, at \*P13 (citing *Employers Insurance of Wausau v. Ehlco Liquidating Trust,* 186 Ill. 2d 127, 150, 708 N.E. 2d 1122, 237 Ill. Dec. 82 (1999)). "Insurers who walk away from their insured <u>and do neither</u> [of the above], and are later found to have wrongfully denied coverage, are estopped from raising policy defenses to coverage." *Id.* (emphasis added).

By seeking a declaratory judgment, Alea did not breach its duty to defend and therefore the estoppel or mend the hold doctrine does not apply because Alea. *Id.* at \*P14. While the estoppel doctrine may not have precluded Alea from raising rescission once litigation reached the summary judgment stage, Alea may have been unable to raise it for other reasons. This Court however finds that there is a factual question as to whether rescission remained viable. Judge Novak allowed Attorney Novak to supplement the summary judgment briefing, but Attorney Novak was limited by the pleadings as to what grounds for summary judgment were available. This Court is unable to discern from the record whether Judge Novak, in her discretion, may have allowed an amended complaint in November 2009 when Attorney Novak took over the case. There is evidence from her later ruling in July 2010 where she stated rescission was procedurally forfeited. Attorney Novak certainly believed it was still viable as he repeatedly sought to raise the issue. Accordingly, this Court finds that a factual issue remains as to whether J&B forfeited rescission by failing to raise it before close of discovery and dispositive motions or whether rescission remained viable as a claim when Novak substituted as counsel.

*2. Negligent Act or Omission*

"In Illinois the question of whether a lawyer has exercised a reasonable degree of care and skill in representing and advising his client has always been one of fact." *Brown v. Gitlin,* 19 Ill. App. 3d 1018, 1020, 313 N.E. 2d 180 (1974). This question of fact is generally determined through expert testimony and usually cannot be decided as a matter of law. *Gelsomino v. Gorov,* 149 Ill. App. 3d 809, 814, 502 N.E. 2d 264 (1986). An attorney is not liable for mere errors of judgment. *Smiley v. Manchester Ins. & Indem. Co.*, 71 Ill. 2d 306, 313 (1978). The Illinois Appellate Court, First District, discussed at length the application of the "judgmental immunity" doctrine, which provides that "an attorney will generally be immune from liability, as a matter of law, for acts or omissions during to the conduct of litigation, which are the result of an honest exercise of professional judgment." *Nelson,* 997 N.E. 2d at 881 (quoting *McIntire v. Lee*, 149 N.H. 160, 816 A. 2d 993, 1000 (N.H. 2003)). The Illinois Appellate Court noted that its research disclosed that "courts in other jurisdictions have generally discussed judgmental immunity as applying to an attorney's decision in two situations: (1) where the law is unsettled; or (2) the decision is tactical." *Nelson,* 997 N.E. 2d at 882.

Here, each party has presented experts that provide opposing opinions as to J&B's exercise of its duty of care. Neither party has presented a *Daubert* or Federal Rule of Evidence 702 challenge to the qualifications of the experts to testify to their opinions, but instead, Alea in particular, argues that defendants' expert Jill Berkeley is wrong. Further, J&B testified to how it evaluated Alea's coverage claims and that they believe that it was a matter of professional judgment to pursue the declaratory judgment action under the subcontractor warranty and the earth movement exclusion. J&B points to its opinion letter as evidence of their professional judgment, analysis, and care. Alea opposes this evidence referring to J&B's time sheets, arguing that J&B spent insufficient time examining the application and researching the issues. However, it is the jury's role to resolve conflicts in the evidence, to make credibility determinations, and to decide the weight to be given to

the witnesses' testimony. *See Union Planters Bank, N.A. v. Thompson Coburn LLP*, 402 Ill. App. 3d 317,

359 (Ill. App. Ct. 5th Dist. 2010) (citing *Orzel v. Szewczyk*, 391 Ill. App. 3d 283, 293, 908 N.E.2d 569,

330 Ill. Dec. 381 (2009)). This Court therefore finds that factual issues abound on the issue of

whether J&B met the standard of care.

### 3. Merit of Rescission

Lastly, the parties dispute whether rescission, if raised, would have prevailed in the

underlying declaratory judgment. Insurance policies may be rescinded if: the statement on an

application must be false and the false statement must have been made with intent to deceive or

must materially affect the acceptance of the risk or hazard assumed by the insurer. *Golden Rule Ins.

Co. v. Schwartz*, 203 Ill. 2d 456, 464, 786 N.E. 2d 1010 (2003). Therefore, a misrepresentation, even if

innocently made, can serve as the basis to void a policy. *Id.* Under Illinois law, rescission of a

contract due to mistake (mutual or unilateral) is allowed if "the party seeking rescission shows by

clear and convincing evidence that (1) the mistake is of a material nature; (2) the mistake is of such

consequence that enforcement is unconscionable; (3) the mistake occurred notwithstanding the

exercise of due care by the party seeking rescission; and (4) rescission can place the other party in

status quo." *Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.,* 936 F.Supp.2d 933, 944

(N.D. Ill. 2013) (collecting cases). Where the facts are not in dispute, the construction of an

insurance policy, including the application, is a matter of law which may properly be determined by

summary judgment. *A.D. Desmond Co. v. Jackson Nat'l Life Ins. Co.*, 223 Ill. App. 3d 616, 619, 585 N.E

2d 1120 (2d Dist. 1992).

Here, the facts are in dispute and resolution of the dispute necessarily relies on testimony of

James Corse of Tri-K regarding his answers to the application as well as the testimony of the parties'

experts and their understanding of the application. Alea asserts that Tri-K's insurance application

answer should have been a red flag for J&B. On the other hand, J&B assert the application

11

questions and the allegations in the *Weber* complaint were consistent and if Tri-K honestly believed at the time it completed the application, there was no misrepresentation. As noted above, it is the role of the trier of fact to resolve conflicts in the evidence and testimony, and to weigh the credibility of the witnesses. Accordingly, this Court finds there are factual issues as to the merit of the rescission claim.

**Conclusion**

This Court denies both motions for summary judgment. The trial will proceed as scheduled.

IT IS SO ORDERED.

Date: September 23, 2014

Entered

United States District Judge